UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JOHNNY D. ORUM,

               Plaintiff,                   Case No. 2:18-cv-158

v.                                    Honorable Janet T. Neff

DAVID RINK et al.,

               Defendants.

_____/

## OPINION & ORDER

This is a civil rights action brought by a state prisoner. Under Federal Rule of Civil Procedure 21, the Court is permitted to drop parties *sua sponte* when the parties have been misjoined. Pursuant to that rule, the Court will drop as misjoined Defendants Derry, LaCrosse, Heinritz, Pancheri, Osborn, McLeod, Salomon, Golladay, Hubbard, Hough, McLean, Ormsbee, Rosebrock, Isard, Unknown Part(y)(ies) #1, and Unknown Part(y)(ies) #2 and dismiss Plaintiff's claims against them without prejudice.

## Discussion

### I.    Factual Allegations

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan, and the Alger Correctional Facility (ARF) in Munising, Alger County, Michigan. Plaintiff sues MDOC Director Heidi E. Washington, MDOC CFA Special Activities Director David Leach, and MDOC CFA Classification Director

Laura Heinritz, together with the following URF officials: Chaplain David Rink; Warden Jeffrey Woods; Assistant Resident Supervisor (ARUS) Arthur J. Derry; Resident Unit Manager (RUM) Michael LaCrosse; Prisoner Counselors (PCs) Adam Pancheri, Gary W. McLeod, and Jillian Salomon; Correctional Officers Byron Osborn, Unknown Golladay, and J. Rosebrock; Inspectors Unknown Hubbard and Unknown Hough; Grievance Coordinator M. McLean; Sergeant A. Ormsbee; Deputy Warden D. Isard; and the unknown transfer coordinator (Unknown Part(y)(ies) #1). He also sues the unknown mailroom supervisor and/or staff person at LMF (Unknown Part(y)(ies) #2).

Plaintiff's allegations against the 20 named Defendants involve a string of actions spanning the period from July 24, 2016, to September 28, 2016, shortly after he was transferred to LMF. Plaintiff claims that he filed a civil rights action against Defendants Washington, Leach, Woods, Rink, Derry, and Osborn in May 2016, and that the entire course of subsequent behavior by all Defendants was retaliatory for his filing of that lawsuit.

Plaintiff claims that he sent a kite to both food service and Chaplain Rink, asking to receive a fast bag for the Fast of Tammuz which is a Jewish religious holy day included in the MDOC's approved fast and feast days. Defendant Rink allegedly told Plaintiff and others that they would be receiving a fast bag on the night of July 24, 2017, following the Fast of Tammuz. Plaintiff, however, did not receive the fast bag. Plaintiff spoke with the food service supervisor and Sergeant Bernhardt (not defendants), who informed Plaintiff that they knew nothing about the fast. Plaintiff filed Grievance No. URF-16-07-2726-20E on July 26, 2016, against Defendants Rink, Woods, and Leach, as well as Assistant Deputy Warden Horton (not a defendant) and the MDOC deputy director. (Grievance No. URF-16-07-2726-20E, ECF No. 1-1, PageID.21.) He claimed violations of the First and Eighth Amendments, the Equal Protection Clause, and the

Religious Land Use and Institutionalized Persons Act (RLUIPA), on the basis that he was deprived of food for one day.

Plaintiff sent another kite to Defendant Rink, asking for a fast bag for the fast of Tisha B'av (observed on August 13-14, 2016). When he did not receive a prompt response from Rink, he filed another grievance, No. URF-16-08-2813-28E on July 28, 2016, against Defendant Rink. His grievance was rejected as untimely on August 3, 2016. (Grievance No. URF-16-08-2813-28E and response, ECF No. 1-1, PageID.23-24.) After his grievance was rejected, Defendant Rink sent Plaintiff a memorandum, advising him that the MDOC Central Office had informed him that the institution would make no provision for fast bags for the fasts of Tammuz and Tisha B'av. Defendant Rink advised Plaintiff that he was obligated to follow the instructions of the Central Office. He also informed Plaintiff that the MDOC recognizes and accommodates many religious fast days such as these without special meal arrangements for prisoners who observe the fasts. (Rink Kite Response, ECF No. 1-1, PageID.26.)

Plaintiff filed another grievance about the denial of a fast bag on Tisha B'av on August 11, 2016, naming Defendants Washington, Leach, Rink and the MDOC Deputy Director, which was rejected as duplicative by Defendant McLean on August 15, 2016. (Grievance No. URF-16-08-2949-28A, ECF No. 1-1, PageID.28-29.)

In his next set of allegations, Plaintiff contends that he was harassed and threatened by Defendant Osborn. On August 1, 2016, Osborn allegedly followed Plaintiff through the chowline, harassing Plaintiff and verbally threatening to set him up on a false misconduct charge to get him sent to segregation. Plaintiff filed Grievance No. URF-16-08-2838-17A, naming Osborn and the entire URF administration for threatening and intimidating behavior,

unprofessionalism, and harassment and alleging that his life and safety were in grave jeopardy. (Grievance No. URF-16-08-2838-17A, ECF No. 1-1, PageID.31.)

The following day, Plaintiff sent letters to Defendants Washington and Woods, his mother, and the American Friends Service Committee, complaining about the ongoing threatening and intimidating behavior of Defendant Osborn and others. (Aug. 2, 2016, Letter, ECF No. 1-1, PageID.33-35.) Plaintiff again stated that his life and safety were in jeopardy, because Osborn regularly harassed him and had threatened him with a false misconduct charge. Plaintiff's mother called the facility about Plaintiff's letter, and Defendant Inspectors Hubbard and Hough called Plaintiff to their office on August 9, 2016, to ask what was going on. Plaintiff stated that he feared for his life. According to a letter sent by Plaintiff to Defendants Washington and Woods on August 10, 2016, Defendants Hubbard and Hough asked how they could resolve the problem and offered to transfer Plaintiff to the west side of the facility. Plaintiff expressed his willingness to be moved, but he told Defendants Hubbard and Hough that Defendant Osborn had threatened him on numerous occasions and he believed that Defendant Osborn would recruit other officers to harass Plaintiff. (Aug. 10, 2016, Letter, ECF No. 1-1, PageID.39-41.) The inspectors advised Plaintiff that they would have to check with Defendant Osborn and indicated that they would talk to Defendant Salomon about transferring Plaintiff to the west side of the facility. (Compl., ECF No. 1, PageID.6.) Defendant Warden Woods responded to Plaintiff's August 10, 2016 letter, advising Plaintiff that he did not transfer prisoners for protection from staff, and he advised Plaintiff to learn to get along with staff and other prisoners.

On August 12, 2016, Defendant Pancheri allegedly threatened to move Plaintiff into an inhospitable cell if Plaintiff did not stop whining and having his mother call. Shortly thereafter, Plaintiff was moved into an "inhospitable" cell with a disabled prisoner. (Compl., ECF

No. 1, PageID.6.) Plaintiff filed a grievance against Pancheri, alleging that the move amounted to cruel and unusual punishment and was ordered in retaliation for Plaintiff's exercise of his First Amendment rights. (Grievance No. URF-16-08-2950-17B, ECF No. 1-1, PageID.43.) That same day, Plaintiff wrote another letter to Defendants Washington and Wood and copied to his mother and the American Friends Service Committee, saying that he had been told that staff were sick of his complaints and grievances, which he interpreted as a veiled threat. (Aug. 12, 2016, Letter, ECF No. 1-1, PageID.45-47.)

On August 13, 2016, a Class-III misconduct charge was written against Plaintiff for having his cell light on at 1:00 a.m. His cellmate also received a misconduct ticket for having his television on at the same time. Plaintiff complains that he was asleep at the time, though he does not dispute that, under the rules, the light switch was deemed to be in his area of control. Plaintiff pleaded guilty to the misconduct. (Aug. 13, 2016, Misconduct Report, ECF No. 1-1, PageID.49.) Plaintiff asserts that he was forced to plead guilty so that he could receive a 2-day loss-of-privileges sanction, rather than face a possible 30-day loss-of-privileges sanction if found guilty.

That same day, Plaintiff approached Defendant Golladay to ask a question. Golladay told Plaintiff that he was not going to play games with Plaintiff writing grievances and constantly complaining. Golladay allegedly threatened that, if Plaintiff "kept it up he would just pull his pin and said something about us get to gettin it an he would say I assaulted him." (Compl., ECF No. 1, PageID.7 (verbatim).) When Plaintiff responded that Defendant Golladay could not get away with his threat because of the new camera system in the halls, Defendant Golladay responded that he could just say he found a knife behind Plaintiff's locker, which Plaintiff could not disprove. Plaintiff spoke to Sgt. Martin (not a Defendant), complaining that he feared for his safety. Plaintiff then wrote a grievance against Defendant Golladay. (Grievance No. URF-16-08-

2948-17B, ECF No. 1-1, PageID.51.)  In addition, after Plaintiff complained to Martin, Defendant Osborn called Plaintiff back into the dining hall and told him to watch himself.  Plaintiff filed another grievance against Defendant Osborn, also on August 13, 2016, but the grievance was apparently never processed.  (Unnumbered Grievance, ECF No. 1-1, PageID.53.)  Plaintiff kited Defendant McLean.  That same date, Plaintiff again wrote to Defendants Washington and Woods, copying his mother and the American Friends Service Committee, again complaining about fear for his life arising out of the misconduct charge and Galloway's threat to falsify a misconduct charge.  (Aug. 13, 2016, Letter, ECF No. 1-1, PageID.58-60.)

On August 18, 2016, Plaintiff was reviewed by Defendant Ormsbee on a Class-II misconduct charge for possession of stolen property/theft, which was written by Officer Southwell (not a defendant).  Southwell alleged in the misconduct charge that he had observed Plaintiff give his cell key to another inmate, who used it to steal the property of Plaintiff's cellmate.  (Aug. 18, 2016, Misconduct Charge, ECF No. 1-1, PageID.62.)  Plaintiff asserts that the key was stolen while he was in the shower.  Upon review of the misconduct charge, Defendant Ormsbee elevated the misconduct to a Class-I charge, making it nonbondable and resulting in Plaintiff being sent to segregation.  Plaintiff complains that the elevation of the charge violated MDOC policy.  Plaintiff subsequently was found guilty of the Class-I misconduct charge and was classified to administrative segregation.  (Prisoner Classification Review Form, ECF No. 1-1, PageID.96.)

On August 19, 2016, after Plaintiff had been sent to segregation, Defendant Rosebrock packed his property.  Rosebrock issued a contraband removal slip and a notice of intent (NOI) for an administrative hearing on Plaintiff's excess state-issued property.  (NOI, ECF No. 1-1, PageID.64-65, 67.)  On August 26, Defendant Pancheri came to Plaintiff's segregation cell to inventory his state-issued property, noting that Plaintiff had no state-issued socks, but otherwise

had all of his state-issued property.  Socks were not listed as items confiscated under the notice of intent.  (*Id.*)  On August 31, 2016, Defendant Salomon allegedly falsified an administrative hearing report, stating that Plaintiff admitted that he possessed a complete set of state-issued property.  (Aug. 31, 2016, Hr'g Report, ECF No. 1-1, PageID.69.)  Plaintiff filed a grievance against Defendant Salomon on September 12, 2016, alleging the falsification of the document, in violation of policy, due process, and state law.  (Grievance No. URF-16-09-3253-07A, ECF No. 1-1, PageID.71.)

On August 25, 2016, Plaintiff was taken to his property to retrieve his legal documents and pending grievances.  At that time, he realized that some of his legal property was missing, mostly related to *Orum v. MDOC et al.*, No. 2:16-cv-109 (W.D. Mich.).  Plaintiff kited Defendants Wood, Salomon, the unspecified URF Legal Coordinator/Steamboat Property Officer, the RUM, ARUS, and PC about the missing property.  Defendant Woods responded that the matter had been reviewed and forwarded to Defendant RUM LaCrosse for response.  Defendant LaCrosse responded on September 23, 2016, that he had looked but had been unable to find any property belonging to Plaintiff that had not been sent to segregation.  (LaCrosse Response, ECF No. 1-1, PageID.78.)  In the interim, Plaintiff filed a grievance against staff members including Defendant Rosebrock for stealing his legal property, alleging that it violated policy, denied Plaintiff access to the courts, and amounted to retaliation.  (Grievance No. URF-16-09-3211-19D, ECF No. 1-1, PageID.76.)

Also on August 25, 2016, Plaintiff kited the grievance coordinator, asking for a list of his pending grievances and response dates and copies of a particular grievance and complaining that he had not received a receipt or rejection for an unnumbered grievance, which he attaches to

his complaint. Plaintiff wrote another letter to Defendant Washington on August 26, 2016, complaining about his stolen legal property. (Aug. 25, 2016, Letter, ECF No. 1-1, PageID.86.)

Plaintiff gave a second-shift officer his Step-II grievance appeal for Grievance No. URF-16-09-3211-19D, to be sent to the warden's office. While Plaintiff was in the exercise yard, officers packed Plaintiff for transfer. Plaintiff arrived at LMF and received his property on September 29, 2016. He saw that the Step-II grievance response that he had given the URF officer had been packed with his property. He immediately addressed a pre-paid envelope with the grievance for mailing to URF. On October 4, 2016, the mail was returned to him for insufficient postage. After several back-and-forth's with the mailroom about postage, the grievance response and an explanation for the delay were sent to URF. Plaintiff filed a grievance about the LMF mailroom, which caused his grievance to be late. (Grievance No. LMF-16-10-2742-15D, ECF No. 1, PageID.94.)

Plaintiff next alleges that, before he left URF, he met with the Security Classification Committee (SCC), and he was informed that they would recommend that he be transferred to complete his segregation and subsequently be housed in a Level-II unit.[1] That recommendation was approved by Warden Woods. (Prisoner Classification Review Form, ECF No. 1-1, PageID.96.) However, when Plaintiff arrived at LMF, he was informed by the warden that he would continue his administrative segregation, followed by placement at Level IV. Plaintiff kited LMF PC Lancour and LMF Warden Immell. He was advised to file a grievance with URF. Plaintiff wrote a grievance against Defendants Heinriz, Isard, and McLeod for transferring him to a Level IV and sent it to the URF grievance coordinator. (Grievance No. URF-

---

[1] In the MDOC, security classifications, from least to most secure, are as follows: Levels I, II, IV, V, and administrative segregation. MDOC Policy Directive 05.01.130 ¶ B (Oct. 10, 2011).

15-10-3618-24C, ECF No. 1-1, PageID.98.) Plaintiff alleges that the transfer to a Level-IV facility was done in retaliation for filing grievances.

Plaintiff contends that Defendants Washington, Leach, and Rink, by failing to provide him with a religious fast bag on two fast days violated the First and Eighth Amendments, the Equal Protection Clause, the RLUIPA, and various provisions of the Michigan constitution. He further alleges that Defendant Osborn harassed, threatened and intimidated him in retaliation for filing grievances and lawsuits, in violation of the First and Eighth Amendments, the Equal Protection Clause, and various provisions of the Michigan constitution. Plaintiff complains that Defendant Pancheri threatened to move him to an inhospitable living situation in retaliation of his complaints, allegedly in violation of the same provisions as Osborn. Plaintiff contends that, by threatening to lie about him and set him up for a grievance, Defendant Golladay violated the same rights. Defendant McLean, by not filing Plaintiff's grievance against Defendant Osborn allegedly violated all of the same rights as Defendant Osborn and violated Plaintiff's right to due process. Plaintiff argues that Defendant Ormsbee, by elevating the misconduct charge and revoking Plaintiff's bond allegedly violated Plaintiffs rights under the First Amendment, the Equal Protection Clause, the Due Process Clause, and Michigan law. In addition, Plaintiff contends that Defendants Salomon, Pancheri, McLeod, and Derry intentionally lied and falsified state documents in retaliation for Plaintiff's protected conduct, causing Plaintiff to go without socks for months, in violation of the First, Eighth and Fourteenth Amendments (equal protection and due process) and the Michigan constitution. Further, he complains that Defendants Rosebrock, Woods, and LaCrosse intentionally stole his legal property without due process and in retaliation, in violation of the First, Fourth, and Fourteenth Amendments, as well as state law. Plaintiff also alleges that Defendants Heinritz, Isard, McLeod, and Unknown Part(y)(ies) #1 transferred Plaintiff

to a higher security level in retaliation for his complaints, in violation of his rights under the First, Eighth, and Fourteenth Amendments and state law.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

## II. Misjoinder

The joinder of claims, parties, and remedies is "strongly encouraged" when appropriate to further judicial economy and fairness. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). This does not mean, however, that parties should be given free rein to join multiple plaintiffs and multiple defendants into a single lawsuit when the claims are unrelated. *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x 436, 437 (3d Cir. 2007) (per curiam); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (adopting magistrate judge's report).

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), *quoted in Proctor*, 661 F. Supp. 2d at 778, and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corrs.*, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder in a prisoner civil rights action undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See*

28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees – for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person – say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions – should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998); *Shephard v. Edwards*, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing

fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should his claims turn out to be frivolous.

Plaintiff's first set of allegations involves the denial of fast bags for two Jewish fast days, Tammuz and Tisha B'av. The first four Defendants named in the action (Defendants Rink, Leach, Woods, and Washington) allegedly participated in the denial of the fast bags. The claims against the other Defendants do not arise out of the denial of the fast bags. They do not arise from the same transactions, and there is no overlap with respect to the individuals involved or the time in which the events at issue occurred, with the exception of Plaintiff's conclusory allegations that all of the actions taken by every Defendant were retaliatory for Plaintiff's past grievances and lawsuits and his allegations that Defendants Woods and Washington failed to respond to his letters and grievances.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to

prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Ordinarily, both the filing of a civil rights action and the filing of a prison grievance are constitutionally protected actions for which a prisoner cannot be subjected to retaliation. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002) (civil rights action); *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (grievance); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (grievance). However, the right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court held in *Lewis v. Casey*, "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.").

Plaintiff alleges that the protected conduct on which he bases his claims was his filing of the civil rights action in *Orum v. Mich. Dep't of Corrs.*, 2:16-cv-109 (W.D. Mich.). That complaint clearly was not entirely frivolous, as the action remains pending more than two years after it was filed. However, Plaintiff utterly fails to make anything more than conclusory allegations linking the filing of that lawsuit to the conduct of Defendants Derry, LaCrosse, Heinritz, Pancheri, Osborn, McLeod, Salomon, Golladay, Hubbard, Hough, McLean, Ormsbee, Rosebrock, Isard, Unknown Part(y)(ies) #1, and Unknown Part(y)(ies) #2.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that the actions of Defendants Derry, LaCrosse, Heinritz, Pancheri, Osborn, McLeod, Salomon, Golladay, Hubbard, Hough, McLean, Ormsbee, Rosebrock, Isard, Unknown Part(y)(ies) #1, and Unknown Part(y)(ies) #2 were motivated by his protected conduct in filing a lawsuit against Defendants MDOC, Washington, Leach and Kenneth McKee. Indeed, although he generally claims that the other Defendants' conduct was taken in retaliation for the filing of the lawsuit, he proceeds to identify a litany of frivolous and nonfrivolous grievances that

he filed in the days and weeks after his original set of claims, which he also alleges formed the protected-conduct prong of his retaliation claim. Thus, Plaintiff the contradicts his original allegation by saying that these later alleged protected actions formed the basis for the later retaliation. Plaintiff's own allegations, therefore, contradict his asserted common basis for his retaliation claims.

Moreover, the Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance or lawsuit and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances and complaints. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Under these circumstances, Plaintiff's generalized retaliation claim falls short of demonstrating a plausible connection between Plaintiff's first set of allegations and the conduct of the other Defendants over the next few months.

Plaintiff arguably suggests that Defendants acted jointly or in a conspiracy against him, which potentially could link all of the allegations of the complaint. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).

Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are, at best, conclusory and speculative. Even viewed in the light most favorable to Plaintiff, the allegations describe a number of discrete facts that occurred over a period of time involving numerous individual officers. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances with which he disagreed. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the various incidents occurring over the long history of Plaintiff's incarceration were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

Plaintiff next appears to suggest that, because he wrote kites and grievances about the remaining actions that Defendants Washington and Woods denied or ignored, the remaining actions are properly joined because Defendants Washington and Woods are properly joined and

also participated in the remaining acts. Plaintiff's suggestion fails for two reasons. First, the suggestion misunderstands the joinder rule. While Defendant Washington has a claim that "is transactionally related to the claim against the first defendant and involves a common question of law or fact," *Proctor*, 661 F. Supp. 2d at 778, no Defendants other than Defendants Leach, Woods, and Washington have a claim that is transactionally related to the first claim and Defendant Rink. Thus, no other Defendants are properly joined. *Id.*

Second, Plaintiff's claim against Defendants Washington and Woods for failing to respond to his kites and grievances neither states a claim against Defendants Washington and Woods nor links Defendants Washington and Woods to the other actions. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Washington or Woods engaged in any active unconstitutional behavior. Accordingly, he fails to

state a claim against them and fails to demonstrate their connection to the actions of the remaining Defendants.

Accordingly, Plaintiff's claims against Defendants Derry, LaCrosse, Heinritz, Pancheri, Osborn, McLeod, Salomon, Golladay, Hubbard, Hough, McLean, Ormsbee, Rosebrock, Isard, Unknown Part(y)(ies) #1, and Unknown Part(y)(ies) #2 are not properly joined to the claims against the other defendants.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572-573 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d

at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

In this case, Plaintiff brings his causes of action against the improperly joined defendants under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

All of the actions about which Plaintiff complains occurred in 2018, well within the three-year period of limitations of § 1983. Those claims are not at risk of being time-barred. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dropped and the claims against them dismissed. Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Derry, LaCrosse, Heinritz, Pancheri, Osborn, McLeod, Salomon, Golladay, Hubbard, Hough, McLean, Ormsbee, Rosebrock, Isard, Unknown Part(y)(ies) #1, and Unknown Part(y)(ies) #2 from the action and dismiss Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits by Plaintiff.[2] *See Coughlin*, 130 F.3d at 1350 ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

---

[2] Plaintiff is cautioned that he must limit all future actions to claims and Defendants that are transactionally related to one another.

Accordingly,

**IT IS ORDERED** that Defendants Derry, LaCrosse, Heinritz, Pancheri, Osborn, McLeod, Salomon, Golladay, Hubbard, Hough, McLean, Ormsbee, Rosebrock, Isard, Unknown Part(y)(ies) #1, and Unknown Part(y)(ies) #2 will be **DROPPED** from this action because they are misjoined, and Plaintiff's claims against them will be **DISMISSED WITHOUT PREJUDICE**.


Dated:   December 20, 2018                              /s/ Janet T. Neff
                                                        Janet T. Neff
                                                        United States District Judge